[Civ. No. 29367.    Second Dist., Div. One.    Dec. 14, 1965.]

CARLYLE MICHELMAN, as Trustee, etc., Plaintiff and Appellant, v. JACQUELINE F. FRYE, Defendant and Respondent.

Gendel, Raskoff, Shapiro & Quittner, G. Merle Bergman, Arnold Quittner and Frank Christi for Plaintiff and Appellant.

Myron W. Curzon and Benjamin Chapman for Defendant and Respondent.

LILLIE, J.—A declaratory relief action was filed by the Trustee in Bankruptcy of Theodore J. Frye, alleging the invalidity of a declaration of homestead made by Mrs. Frye on the ground that she was not physically occupying the premises and her declaration fails to state that she was residing thereon. Each party filed a motion for summary judgment; in addition, plaintiff filed motion for judgment on the pleadings. The court denied plaintiff's motions, and granted defendant's motion for summary judgment; plaintiff appeals from the judgment entered on the order, claiming the trial

court's error in granting defendant's motion to be the sole issue.

The following facts were presented by defendant's affidavit in support of her motion. She married Frye in 1953; they have two children. In 1961 the Fryes, as joint tenants, acquired real property at 6218 East Sixth Street, Long Beach, which they occupied as the family dwelling. Around 9 a.m. on August 9, 1963, in the kitchen of their home, Frye grabbed her by the throat, seized a butcher knife and several times said, "I'll kill you! I'll kill you"; as she screamed he let her go and "hollered," "get out of my sight." She called the children from upstairs and they ran out the front door to the home of a neighbor, taking with them only the clothing they were wearing. Prior thereto, "on dozens of occasions," Frye had, without provocation, whipped the children with a riding crop. She left the home on August 9 fearing for her life and the safety and lives of the children; she had no intention of abandoning her home and only wanted temporary safety from her husband. She went to the home of a niece and immediately consulted a lawyer who filed suit for divorce for her three days later (August 12). She borrowed $100 from her mother and moved into a furnished apartment near her attorney's office; she did not then return to her home because of fear of her husband and because the premises were isolated and, unable to drive a car, she could not conveniently consult with her lawyer. She left most of her clothing and furnishings and all of the furniture at the family home; she at no time changed her voting address. At the time she left her home the property was subject of an escrow to be exchanged for certain apartment buildings; her husband continued to remain on and occupy the premises. However, when it became apparent that the escrow would not close she made demand on Frye to move out so she and the children could resume their residence in the family home. While Frye was living therein, and at a time when she was still residing in the furnished apartment before returning to her home, and on January 30, 1964, she filed a declaration of homestead on the family home. Seven days later (February 6, 1964), Frye not having responded to her demand to move out, she filed an order to show cause to remove him. On March 12, 1964, the court ordered Frye to move out of the premises to permit her to move back in; Frye did so and she promptly returned to the family home with the children. At all times from July 1961, and continuously thereafter, she

considered the family residence to be her home and intended to continue residing therein until the escrow closed and the exchange of properties was made, and left it on August 9 only because she feared for her life and the lives of the children; when the escrow failed to close, she moved into the home as soon as she could have Frye removed. Thereafter, on June 9, 1964, Frye became a bankrupt. The interlocutory decree of divorce was entered on July 10, 1964, wherein she was granted a divorce and the court, among other things, declared her home address to be "6218 East Sixth Street, Long Beach." On September 19, 1964, Frye's Trustee in Bankruptcy filed the within action.

In opposition, Joel Mithers, attorney for plaintiff trustee, filed his declaration wherein he alleged that the "details of the domestic difficulties" between the Fryes referred to in defendant's affidavit "are obviously outside of the personal knowledge of the Trustee and accordingly must be denied by the Trustee on the grounds of lack of information"; he then argued the matters set forth in defendant's affidavit. No facts were set forth in the opposing declaration.

In granting defendant's motion, the trial court upheld the validity of the homestead under section 1263, Civil Code; and declared that defendant's husband physically occupied the premises and defendant temporarily left them but with no intention not to return, and that defendant and her husband always were domiciled there, and temporary absence does not lose the homestead right. (Minute order, December 7, 1964.)

Appellant contends herein that defendant's failure to state in her homestead declaration that she resides on the premises renders the declaration a nullity; and that in any event, residence involves a question of fact which cannot be resolved on motion for summary judgment.

While intent in the establishment of residence is primarily one of fact, it appears that the opposing declaration failed to raise a triable issue; the "denial" therein was not sufficient to controvert the facts set up by defendant's affidavit, thus, the allegations in the supporting affidavit are deemed uncontroverted. The opposing declaration contained solely a "denial" on "the grounds of lack of information" and is wholly insufficient. It contains neither affirmative statements of fact as contemplated by section 437c, Code of Civil Procedure, nor a proper denial made by affiant (on behalf of plaintiff in his representative capacity) "upon his

information *and belief"* as required by section 437c (italics added). Further, no showing therein was made of affiant's inability to secure information concerning the details alleged by defendant, nor was any explanation given concerning the reason Frye did not execute an affidavit or Frye's deposition had not been taken. (*Gardenswartz* v. *Equitable etc. Soc.*, 23 Cal.App.2d Supp. 745, 750 [68 P.2d 322]; *Southern Pac. Co.* v. *Fish,* 166 Cal.App.2d 353, 366 [333 P.2d 133].) ■ Reference may be made to the pleadings for the purpose of defining the issues (*Family Service Agency of Santa Barbara* v. *Ames*, 166 Cal.App.2d 344, 348 [333 P.2d 142]), but it may not be made for the purpose of remedying a failure to state facts in an affidavit. (*Coyne* v. *Krempels*, 36 Cal.2d 257, 263 [223 P.2d 244]; *Kimber* v. *Jones,* 122 Cal.App.2d 914, 918 [265 P.2d 922]; *Vallejo* v. *Montebello Sewer Co., Inc.,* 209 Cal.App.2d 721, 734-735 [26 Cal.Rptr. 447].) ■ The complete insufficiency of the opposing declaration herein placed the proceeding in the same posture as if no counter-affidavit had been filed. Thus, if the facts stated in defendant's affidavit (uncontroverted by plaintiff and accepted as true by the trial court) are set forth with particularity, are within her personal knowledge and to which defendant could competently testify were she sworn as a witness, and are sufficient to entitle her to a judgment, the motion was properly granted. (*Southern Pac. Co.* v. *Fish,* 166 Cal.App.2d 353, 362, 366 [333 P.2d 133]; *Cone* v. *Union Oil Co.,* 129 Cal.App.2d 558, 562 [277 P.2d 464]; *Goldstein* v. *Hoffman,* 213 Cal.App.2d 803, 811 [29 Cal.Rptr. 334]; *Kramer* v. *Barnes,* 212 Cal.App.2d 440, 443 [27 Cal.Rptr. 895].) Defendant's affidavit meets these requirements.

■ Summary judgment is proper if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. (*Wilson* v. *Bittick,* 63 Cal.2d 30, 34 [45 Cal.Rptr. 31, 403 P.2d 159]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Burke* v. *Hibernia Bank,* 186 Cal.App.2d 739, 744 [9 Cal.Rptr. 890]; Code Civ. Proc., § 437c.) ■ No triable issue having been presented and the sole remaining question being one of law the same was appropriately determined on motion for summary judgment. (*Wilson* v. *Wilson,* 54 Cal.2d 264, 269 [5 Cal.Rptr. 317, 352 P.2d 725]; *Siemon* v. *Russell,* 194 Cal.App.2d 592, 595

[15 Cal.Rptr. 218]; *Goldstein* v. *Hoffman,* 213 Cal.App.2d 803, 811 [29 Cal.Rptr. 334].)

At a time when Frye and defendant were still husband and wife and Frye was occupying the family home, but during her temporary absence therefrom, defendant filed a declaration of homestead wherein she stated, ". . . I am a married woman; that my husband is Theodore J. Frye, who has not made any declaration of homestead, and I make such declaration for our joint benefit; that our family consists of my husband and myself, and our two children. My husband is actually residing on the premises hereinafter described, and that I claim said premises as a homestead. . . ."

"The homestead consists of the dwelling house in which the claimant resides, . . ." (§ 1237, Civ. Code.[1]) The statute confers upon a wife the right to select a homestead, in case her husband has not made such a selection, by executing and acknowledging a declaration of homestead and filing the same for the record. (§ 1262.) The declaration of homestead must contain, among other things, "2. A statement that the person making it is residing on the premises, and claims them as a homestead; . . ." (§ 1263.)

It is undisputed that the home on Sixth Street was the family dwelling and, since 1961, the established residence of defendant, her children and her husband; the residence of the husband, the home legally was the residence of defendant wife. (*Dow* v. *Gould & Curry Silver Min. Co.,* 31 Cal. 629, 651; *Luck* v. *Luck,* 92 Cal. 653, 655 [28 P. 787]; *Bullis* v. *Staniford,* 178 Cal. 40, 44 [171 P. 1064]; *Casner* v. *San Diego Trust & Sav. Bank,* 34 Cal.App.2d 524, 538 [94 P.2d 65]; *Hughes* v. *Gorlek,* 123 Cal.App.2d 912, 913 [268 P.2d 43]; Gov. Code, § 244e.) Thereafter, defendant's physical exclusion and absence from the family home, forced upon her by the wrongful conduct of her husband, were not voluntary on her part and only temporary in nature. Although, at the time she left the premises were in escrow, it had always been her intention to live in the home until the trade was made, and had she not been compelled to leave because of the acts of her husband, she would have remained therein until completion of the escrow. The fact is that when she learned the exchange could not be made, she asked the court to remove her husband and did return and physically occupy the premises. (See interlocutory decree, p. 3.) While upon leaving her

---

[1]All section references hereafter are to the Civil Code unless indicated otherwise.

home defendant sued for divorce, and for divorce a wife "may" have a separate residence (Civ. Code, § 129), and for this purpose the residence of the husband shall not in law be deemed to be the residence of the wife, defendant neither sought a permanent residence separate and apart from the family home nor chose to abandon her established home.

Absence from one's permanent residence, if all the while he intends the absence only for a special temporary purpose and to be followed by resumption of the former residence, constitutes neither abandonment thereof nor a change of residence. (*Guiod* v. *Guiod,* 14 Cal. 506, 507, 508 [76 Am. Dec. 440]; *Skinner* v. *Hall,* 69 Cal. 195, 198 [10 P. 406]; *Catsiftes* v. *Catsiftes,* 29 Cal.App.2d 207, 209-210 [84 P.2d 258]; *Estate of Peters,* 124 Cal.App. 75, 77 [12 P.2d 118].) "The question whether a person has changed his residence from one place to another must depend largely upon his intention. (*Johnston* v. *Benton, supra* [73 Cal.App. 565 (239 P. 60)].)" (*Murphy* v. *Travelers Ins. Co.,* 92 Cal.App.2d 582, 587 [207 P.2d 595]; *Brown* v. *Happy Valley Fruit Growers,* 206 Cal. 515 [274 P. 977]; Gov. Code, § 244g.) We have found no California case similar on its facts to the one at bar, but we conclude, under the circumstances, that defendant's forced removal and compelled absence from the established family dwelling in which her husband still resided and to which she intended to and later did return, no more deprived her of her right to declare a homestead on the family home because it was not then the dwelling house in which the claimant physically resided (§ 1237) or because she was not then physically residing on the premises (§ 1263), than the forced removal of a wife by her husband from the family home and her temporary absence therefrom operates as an abandonment of a homestead right already acquired by her. Other jurisdictions have long held that where a wife leaves home under compulsion of her husband, exercised by force and threats, she loses none of her rights in a homestead previously declared thereon. (See Annotation, 42 A.L.R. 1162.) The reasoning in those cases applies as well to the situation herein; it is set out with clarity in the early case of *In re Murphy,* 46 Wash. 574 [90 P. 916]—to hold, under circumstances where the husband and wife actually occupied the premises as a home on which a homestead was declared, and by abuse and cruelty the husband drove the wife therefrom forcing her to leave involuntarily, with no intention of abandoning her homestead and with intention of returning thereto, that she can not subsequently claim the homestead,

and to do so for the sole reason that she was not actually residing on the property as contemplated in the Homestead Act would be to annul the main purpose of the Act and to hold that a husband by driving his helpless wife from her home could entirely deprive her of her homestead rights. "It would be a travesty on justice to now hold that she has been deprived of her rights by the inexcusable and cruel conduct of her husband." To the same effect are other early authorities: *Herman* v. *Smith* (Tex. Civ. App.) 141 S.W. 1087; *Barker* v. *Dayton*, 28 Wis. 367; *Keyes* v. *Scanlan*, 63 Wis. 345 [23 N.W. 570]; *Vanzant* v. *Vanzant*, 23 Ill. 536; *Sherrid* v. *Southwick* 43 Mich. 515 [5 N.W. 1027]; *Rogers* v. *Day* 115 Mich. 664 [74 N.W. 190, 69 Am.St.Rep. 593]; *Stanton* v. *Hitchcock*, 64 Mich. 316 [31 N.W. 395, 8 Am.St.Rep. 821]; *Swingle* v. *Swingle*, 36 N.D. 611 [162 N.W. 912].) Too, more recent authorities hold that a wife's forced or involuntary absence from her home does not constitute an abandonment of a homestead already declared (*Saint-Gaudens* v. *Bull* (Fla. 1954) 74 So.2d 693), and that the domicile of the husband is the domicile of the wife and as long as the wife has the right and will to remain at home, and her physical exclusion therefrom is caused by the violence of her husband, she shall be considered as living therein. (*Robbins* v. *Berry* (1952) 213 Miss. 744 [57 So.2d 576], and *Bydalek* v. *Bydalek*, 396 Ill. 65 [71 N.E.2d 19].) *Greenlee* v. *Greenlee*, 7 Cal.2d 579 [61 P.2d 1157], while involving a wife who had been deserted by her husband, but who was in possession of the premises, reveals the general policy of California courts in construing the homestead statute: "All that a husband would have to do in order to defeat his wife's right to a homestead would be to desert her, and from that moment on she would be powerless to preserve for herself a home in which to live. The homestead laws have always been given a most liberal construction in order to advance their beneficial objects and to carry out the manifest purpose of the legislature." (P. 583.) (*Michels* v. *Burkhard*, 47 Cal.App. 162 [190 P. 370]; *Reymond* v. *Louisiana Trust & Sav. Bank*, 177 La. 409 [148 So. 663].) ". . . The husband will not be permitted to defeat the wife's homestead right by the simple expedient of denying her the privilege of using or occupying the same. [Citations.]" (*Korn* v. *Korn* (Tex.Com. App.) 15 S.W.2d 1017, 1019.)

We conclude, therefore, that defendant, driven from the

established family dwelling by the wrongful acts of her husband who continues to reside therein, but intending to return thereto, loses no right during her compelled temporary absence therefrom to select the family dwelling as a homestead, to which right she would otherwise be entitled under the homestead statute if her husband does not make such selection; and that she retains the right without prejudice as if she had continued to be in actual physical residence at the dwelling or continued to reside therein with her husband. Liberally construing the homestead statute to advance its beneficial objects and carry out its purposes, we deem defendant to have been residing on the premises within the meaning of the statute, she not having abandoned her husband or the family home and there having been no divorce at the time.

■ Appellant contends further that defendant's failure to recite in her declaration of homestead that she resides on the property renders the declaration a nullity. Section 1263, Civil Code, provides that the declaration of homestead must contain, among other things, ". . . 2. A statement that the person making it is residing on the premises, and claims them as a homestead; . . ." Assuming the omission of such statement from the declaration, appellant argues the rule of strict construction, relying upon cases involving declarations from which there have been omitted one or more required statements under the statute (§ 1263). (*Ashley* v. *Olmstead,* 54 Cal. 616 [failure to state actual estimate of value]; *Olds* v. *Thorington,* 47 Cal.App. 355 [190 P. 496] [omission of statement declarant resided on premises]; *Reid* v. *Englehart-Davidson etc. Co.,* 126 Cal. 527 [58 P. 1063, 77 Am.St.Rep. 206] [omission of statement declarant is head of family—sex of declarant could not be determined from declaration]; *Esten* v. *Cheek* (9th Cir. 1958), 254 F.2d 667 [error in lot number]; *Booth* v. *Galt,* 58 Cal. 254; *Schuler-Knox Co.* v. *Smith,* 62 Cal.App.2d 86 [144 P.2d 47] [wife's declaration contained neither statement that husband had not made declaration nor that she made it for their joint benefit]; *Boreham* v. *Byrne,* 83 Cal. 23 [23 P. 212] [allegation of possession but none of residence].)

Although our courts have refused to dispense entirely with any of the essential matters set forth in subdivisions 1 through 4 of section 1263, when the declaration of homestead contains the essence of the statutory requirements they apply the rule of liberal construction (*Greenlee* v. *Greenlee,* 7 Cal.

2d 579, 582 [61 P.2d 1157]) and uphold the validity of the declaration on the basis of substantial compliance with the statute. (*Johnson* v. *Brauner*, 131 Cal.App.2d 713, 717 [281 P.2d 50]; *Feintech* v. *Weaver*, 50 Cal.App.2d 181, 183 [122 P.2d 606].) Defendant stated in the declaration, "My husband is actually residing on the premises herein described, and that I claim said premises as a homestead," and ". . . that I am a married woman; that my husband is Theodore J. Frye, who has not made any declaration of homestead, and I make such declaration for our joint benefit; that our family consists of my husband and myself, and our two children. . . ." These facts alleged in the declaration construed in the light of the rule that "the residence of the husband is the residence of the wife" compel the implication that on the premises where defendant stated her husband was residing and which she claimed as a homestead, she too was residing. "When these several acts have been substantially performed, and when the declaration contains the essence of the statutory requirements, the construction should be so liberal as to *advance* the object of the constitution and the statute." (*Southwick* v. *Davis*, 78 Cal. 504, 508 [21 P. 121]; *Viotti* v. *Giomi*, 230 Cal.App.2d 730, 735 [4 Cal.Rptr. 345]; *Rich* v. *Ervin*, 86 Cal.App.2d 386, 390 [194 P.2d 809]; *Samuels* v. *Delucchi* (9th Cir. 1961) 286 F.2d 504; *Curzon* v. *Dulgarian* (9th Cir. 1961) 287 F.2d 30; *Feintech* v. *Weaver*, 50 Cal.App.2d 181, 183 [122 P.2d 606]; *Johnson* v. *Brauner*, 131 Cal.App.2d 713 [281 P.2d 50].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.