Lewis F. BLAGG, Appellant,

v.

Irving I. BASS, Trustee in Bankruptcy of
the Estate of Lewis F. Blagg,
Bankrupt, Appellee.

No. 15933.

United States Court of Appeals
Ninth Circuit.

Dec. 11, 1958.

Maurice Gordon, Mark F. Jones, Jr.,
Los Angeles, Cal., for appellant.

C. E. H. McDonnell, Los Angeles, Cal.,
for appellee.

Before BARNES, HAMLIN and
JERTBERG, Circuit Judges.

HAMLIN, Circuit Judge.

This is an appeal from an order of
the District Court, Southern District of
California, Central Division, which af-
firmed an order of a Referee in Bank-
ruptcy denying to appellant a homestead
exemption.

Appellant, after being adjudicat-
ed a bankrupt, claimed a homestead ex-
emption of real property upon which he
resided. The Referee in Bankruptcy re-
fused to allow the exemption and this
action was confirmed by the District
Court upon a petition to review. This
appeal followed. Jurisdiction of the
court below is based on § 2, sub. a(10)
of the Bankruptcy Act (11 U.S.C.A. §
11). Jurisdiction of this court is based
upon § 24 of the Bankruptcy Act (11
U.S.C.A. § 47).

The facts show that on December 18,
1956, appellant executed and recorded a
Declaration of Homestead under the pro-
visions of California law, West's Ann.
Civil Code, §§ 1260, subd. 2, 1266 and
1267, declaring he was a single man re-

siding on the described premises and claimed them as a homestead.[1]

On December 19, 1956, he executed and recorded an Abandonment of said homestead.[2]

On December 19, 1956, he then executed and recorded a Declaration of Homestead, declaring, "I, Lewis F. Blagg, do hereby declare that I am the head of a family, but that I am not married and that my family consists of myself and a minor daughter." [3]

On December 21, 1956, appellant filed his Petition in Bankruptcy with a schedule of his assets and liabilities. In Schedule 5–B of this petition, appellant claimed a homestead as the head of a family in the following language:

"Homestead on home at 11042 West Hondo Parkway, Temple City;

---

[1]. "Declaration of Homestead

"Be It Known that I, Lewis F. Blagg, a single man, hereby declare that I am at the time of the making of this declaration actually residing on the premises hereinafter described and claim them as a homestead.

"The premises so claimed by me consist of the real property situated in Temple City, County of Los Angeles, State of California, and described as follows:

"All of Lot 61 and the south westerly 10 ft. of Lot 62, Tract 11584, as recorded in Book 213/2 and 3 of Maps, in the office of the County Recorder of Los Angeles County, California, said property formerly being registered land entered on a memorial certificate M.H. 2129.

"Said property consists of a 10-room residence and converted garage located at 11042 West Hondo Parkway, Temple City, California.

"That I estimate the actual cash value of said premises exclusive of the business portion thereof which is located over the Bank at the rear, to be the sum of $30,-000.00.

"In Witness Whereof, I hereunto set my hand this 18th day of December, 1956.

/s/ Lewis F. Blagg"

[2]. "Declaration of Abandonment of Homestead

"Know All Men By These Presents: That I, Lewis F. Blagg, do hereby declare that I am a single man and I do hereby abandon the homestead heretofore declared on the property and premises hereinafter described, the declaration whereof was recorded on the 18th day of December, 1956, under Document number 2862, in the office of the County Recorder of Los Angeles County, State of California.

"Said premises herein referred to, and the homestead upon which is hereby abandoned, are situated in the County of Los Angeles, State of California, and described as follows, to-wit:

"All of Lot 61 and the southwesterly 10 feet of Lot 62, Tract 11584, as rec-

orded in Book 213, Pages 2 and 3 of Maps, in the office of the County Recorder of said county and state, said property formerly being registered land entered on a memorial certificate M.H. 2129.

"In Witness Whereof, I hereunto set my hand this 19th day of December, 1956.

/s/ Lewis F. Blagg"

[3]. "Declaration of Homestead

"Be It Known That I, Lewis F. Blagg, do hereby declare that I am the head of a family, but that I am not married, and that my family consists of myself and a minor daughter;

"That I am, at the time of making this declaration, residing on the premises hereinafter described, and that I claim said premises as a homestead.

"The premises so claimed by me consist of the real property situated in Temple City, County of Los Angeles, State of California, and described as follows:

"All of Lot 61 and the southwesterly 10 feet of Lot 62, Tract 11584, as recorded in Book 213, Pages 2 and 3 of Maps, in the office of the county recorder of said county and state, said property formerly being registered land entered on a memorial certificate M.H. 2129.

"The improvements on said real property consist of a 10 room residence and a converted garage, plus a structural steel building 30 feet by 80 feet in area and a steel frame building 25 feet by 50 feet in area. That I estimate the cash value of said land and premises to be the sum of $30,000.00.

"That a prior Declaration of Homestead has been heretofore abandoned by me, by a Declaration of Abandonment.

"In Witness Whereof, I hereunto set my hand this 19th day of December, 1956.

/s/ Lewis F. Blagg"

petitioner's 11-year old daughter resides with petitioner during the summer months school vacation and petitioner therefore believes he is entitled to the exemption provided by Sections 1260–1261 of the [West's Ann.] California Civil Code, to-wit, $12,500."

A hearing was later held upon the Trustee's report refusing to set aside appellant's home as a homestead, and upon appellant's objections thereto. At this hearing, appellant testified that he had been married, but that his wife had obtained a divorce in Nevada in 1955 and that that court had, in its decree, awarded the custody of a minor child, Roberta Blagg, to the plaintiff therein and that the decree contained a provision that appellant pay $20 per week to the plaintiff therein for the support of said minor child. The appellant further testified that his wife had left him in December, 1954, and that Roberta had lived with him in Los Angeles until some time in the spring of 1955. It was at this time, shortly after the date of the divorce decree on May 12, 1955, that appellant made arrangements with Roberta's grandmother for Roberta to live with her in Turlock, California (about 300 miles from Los Angeles). He claimed that from June to September, 1955, and from June to September, 1956, his daughter lived at his home in Temple City. In September, 1956, Roberta again went back to her grandmother's home in Turlock, where she attended school and was physically living in December, 1956, when the Declaration of Homestead was filed by appellant. There was further testimony by appellant as to what support he had provided for his minor child while she was at her grandmother's. Appellant

admitted that he had never provided as much support as the $20 per week amount contained in the divorce decree, but claimed that he had sent money to the grandmother in indefinite amounts and at times when "they would ask for more money."

At the conclusion of the hearing, the Referee made findings that the minor child resided with her maternal grandmother, that the appellant had not supported or maintained the minor child, that the bankrupt was not the head of a family, and that the Declaration of Homestead claimed by appellant was null, void and of no force and effect.

The West's Ann. Civil Code of California sets out in § 1260 who may select homesteads, as follows:

"§ 1260. Persons who may select homesteads; value

"Homesteads may be selected and claimed:

"1. By any head of a family, of not exceeding twelve thousand five hundred dollars ($12,500) in actual cash value, over and above all liens and encumbrances on the property at the time of any levy of execution thereon.

"2. By any other person, of not exceeding five thousand dollars ($5,-000) in actual cash value, over and above all liens and encumbrances. (Enacted 1872. As amended Stats. 1945, c. 789, p. 1477, § 9; Stats. 1947, c. 1077, p. 2482, § 1; Stats. 1949, c. 357, p. 637, § 1; Stats. 1953, c. 943, p. 2319, § 1.)"

and in § 1261 it defines "head of a family." [4]

In the next chapter, which is entitled "Homestead of the Head of a Family," there is set out in § 1263 what the Dec-

---

**4.** "§ 1261. Head of family defined.

"The phrase 'head of a family,' as used in this title, includes within its meaning:

"1. The husband, when the claimant is a married person.

"2. Every person who has residing on the premises with him or her, and under his or her care and maintenance, either:

"(a) His or her minor child, or minor grandchild, or the minor child of his or her deceased wife or husband;

"(b) A minor brother or sister, or the minor child of a deceased brother or sister;

"(c) A father, mother, grandfather, or grandmother;

laration of Homestead of the head of a family must contain:

"§ 1263. Declaration of homestead; contents; evidence

"The declaration of homestead must contain:

"1. A statement showing that the person making it is the head of a family, and if the claimant is married, the name of the spouse; or, when the declaration is made by the wife, showing that her husband has not made such declaration and that she therefore makes the declaration for their joint benefit;

"2. A statement that the person making it is residing on the premises, and claims them as a homestead;

"3. A description of the premises;

"4. An estimate of their actual cash value;

"5. Such declaration of homestead may further contain a statement * * *"

In the next chapter, which is entitled "Homestead of Other Persons," there is set forth in § 1267 what such a declaration of homestead must contain:

"§ 1267. Declaration of homestead; contents; evidence

"The declaration must contain everything required by the second, third and fourth subdivisions of section 1263, and in addition thereto may contain the statement and affidavit provided for by subdivision 5 of said section, with like effect as therein provided. (Enacted 1872. As amended Stats. 1927, c. 491, p. 829, § 1.)"

The Referee held that there was not sufficient evidence for appellant to qualify as head of a family. We have examined the evidence and believe a finding either way could be sustained as being based upon sufficient evidence. However, the Referee had the advantage of seeing and hearing the appellant and could better determine his credibility. We cannot say the finding of the Referee upon this issue is clearly erroneous. General Order in Bankruptcy No. 47, 11 U.S.C.A. following Section 53. Neece v. Durst, 9 Cir., 1932, 61 F.2d 591; Ott v. Thurston, 9 Cir., 1935, 76 F.2d 368; Hudson v. Wylie, 9 Cir., 1957, 242 F.2d 435.

■ However, the Referee went further and found the Declaration of Homestead not only invalid because appellant was not the head of a family as defined in the statute, but that it was "null, void and of no force or effect."

Appellant contends that he is at least entitled to a homestead of $5,000 under subdivision 2 of Section 1260.

His declaration contained all of the statements required by Section 1267 to obtain such a homestead. In addition, it contained an additional statement that he was "head of a family," which the Referee found not to be true. We, however, hold that this surplusage did not vitiate the entire declaration, but that as the declaration contained all of the essentials set forth in the Code Section to secure a $5,000 homestead, it was valid to that extent.

In the case of Feintech v. Weaver, 1942, 50 Cal.App.2d 181, 122 P.2d 606, 607, the defendant there, in executing a declaration of homestead, used a printed form designed for use of the head of a family. She was not the head of a family. It was conceded there, however, that the declaration of homestead contained all of the recitals prescribed by the Civil Code relative to the homesteads of a person not "head of a family." In that case, the District Court of Appeal

"(d) The father, mother, grandfather, or grandmother of a deceased husband or wife;

"(e) An unmarried sister, or any other of the relatives mentioned in this section, who have attained the age of majority, and are unable to take care of or support themselves. (Enacted 1872. As amended Code Am. 1873–74, c. 612, p. 230, § 155; Stats.1893, c. 107, p. 123, § 1; Stats.1921, c. 786, p. 1426, § 1.)"

of California quoted with approval from Greenlee v. Greenlee, 1936, 7 Cal.2d 579, 61 P.2d 1157, as follows:

> "The homestead laws have always been given a most liberal construction in order to advance their beneficial objects and to carry out the manifest purpose of the Legislature."

The Court then went on to discuss California cases where a more strict compliance with the Code had been required, and said:

> "Most of these cases have held declarations invalid because of the omission of some one of the matters required by the code to be included in them."

The Court concluded, in Feintech, that the declaration was sufficient to secure to the claimant a valid homestead for one "other than the head of a family."

We believe that the Feintech case is illustrative of the liberal construction given the Homestead Act by California courts and hold it controlling in the instant case. See Southwick v. Davis, 1889, 78 Cal. 504, 21 P. 121 where the Court said:

> "The homestead right is not one to be industriously pinched and circumscribed and circumvented and beaten back. If the facts of an honest homestead claim be present, a substantial compliance with statutory provisions about making the claim public should be deemed sufficient."

Johnson v. Brauner, 1955, 131 Cal.App. 2d 713, 281 P.2d 50, upholding a homestead despite a technical defect in the declaration contains a good review of the California homestead cases.

Those cases appearing to require a more strict compliance with the Code are distinguishable, either on the basis of a missing essential in the declaration or a public policy reason not present in the instant case. See, for example, Hansen v. Union Savings Bank, 1905, 148 Cal. 157, 82 P. 768 (essential recital was missing); Rich v. Ervin, 1948, 86 Cal. App.2d 386, 194 P.2d 809; and Shumaker v. Biscailuz, 1955, 130 Cal.App.2d 414, 278 P.2d 939 (claimants declaring themselves married when they were not in fact married). In the above cases the declarations were held to invalidate the homesteads.

In the instant case, the appellant first filed a declaration of homestead as one "other than the head of a family." Following advice of counsel, he abandoned the first claim and filed a declaration as the head of a family. Both claims were filed in good faith.

A close factual question results in appellant's not being entitled to the larger exemption afforded to the head of a family. However, finding the case more in accord with Feintech v. Weaver, supra, than with Hansen v. Union Savings Bank, supra, and other cases invalidating homesteads, we hold that the declaration contained all essential recitals of, and entitles appellant to, a homestead exemption of $5,000 under West's Ann.Civ.Code, § 1260, subd. 2.

To the extent that In re Mapes, D.C. S.D.Cal.1954, 120 F.Supp. 316, is inconsistent with this holding, it is hereby overruled.

The judgment of the District Court is reversed.